PHILIP R. SELLINGER
UNITED STATES ATTORNEY
BY:  SARAH DEVLIN
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2740
SARAH.DEVLIN3@USDOJ.GOV

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon.** |
| **v.** | : | **Civil Action No. 23-** |
| **$406,260.00 IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE _IN REM_** |
| | : | |
| **Defendant _in rem._** | | |

Plaintiff the United States of America, by its attorney, Philip R. Sellinger,

United States Attorney for the District of New Jersey, for its verified complaint

(the "Complaint") alleges, upon information and belief, as follows:

## I.  NATURE OF THE ACTION

1.      This action is brought by the United States of America seeking the

forfeiture of $406,260.00 in United States currency seized from Lizhuo Wang

on May 18, 2021, in Flushing, New York (hereinafter referred to as the

"Defendant in rem").

2.      The Defendant in rem is subject to seizure and forfeiture to the

United States of America pursuant to 21 U.S.C. § 881(a)(6), which subjects to

forfeiture all moneys, negotiable instruments, securities, or other things of

value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

3.      The Defendant in rem is further subject to seizure and forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A), which subjects to forfeiture property that was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or a conspiracy to commit such a violation, in violation of Section 1956(h).

## II.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey.

6.      The Defendant in rem is being held on deposit by the United States Marshals Service ("USMS") for the Eastern District of New York in the USMS Seized Asset Deposit Fund account at the Federal Reserve Bank, New York, New York.

### III.  FACTS

7.      Law enforcement has been investigating a drug trafficking and money laundering organization ("DTO /MLO") operating in Washington State, New Jersey, New York, California, Oklahoma, and elsewhere.

8.      The DTO /MLO is involved in the distribution of marijuana and the laundering of the proceeds.  Deliang Zheng ("Zheng") and Jian Lin ("Lin") are members of the DTO/MLO.  Over the course of the investigation, law enforcement has seized over approximately 1,000 pounds of marijuana and over $2,500,000 in the suspected drug proceeds.

*June 19, 2020 Seizure*

9.      On or about July 27,2020 law enforcement seized approximately four pallets from an Staten Island storage facility that had been shipped from Washington and were bound for a facility in Staten Island, New York. Pursuant to a search warrant, law enforcement determined that these pallets held approximately 623.2 kilograms of suspected marijuana.

*May 18, 2021 Seizure of the Defendant In Rem*

10.      Law enforcement identified a white Honda Pilot bearing New Jersey registration C47-GFD (the "Honda Pilot") as being involved in the laundering of illegal narcotics proceeds on behalf of the DTO/MLO.  On May 18, 2021, law enforcement established surveillance at a Flushing, New York residence (the "Residence"), which was later identified as the residence of Zheng.

11.      At approximately 4:17 p.m., law enforcement observed the Honda Pilot depart the garage then immediately double park on 146th Street in front

of the Residence.  The unidentified operator of the Honda Pilot (UM1) met an

unknown male (UM2) in front of 146th Street and handed UM2 a small pouch.

UM2 then left with the pouch in a blue Subaru and the Honda Pilot departed

the area.

12.     At approximately 4:27 p.m., the Honda Pilot parked on 38th

Avenue between Union Street and Bowne Street in Flushing, New York.

Approximately two minutes later, an unidentified male wearing a blue hat

(UM3) walked up to the driver side of the Honda Pilot and handed a black

weighted "Express" bag over to UM1 without speaking to him.  UM1 accepted

the bag, placed it inside the Honda Pilot, and departed the area.

13.     At approximately 4:42 p.m., law enforcement observed the Honda

Pilot pull over on 39th Avenue before College Point Boulevard in Flushing, New

York.  Another unidentified male (UM4) exited the building located at 134-56

39th Avenue with a large, black weighted bag.  UM4 handed the weighted black

bag to UM1 who placed the bag inside the Honda Pilot and departed the

location.

14.     At approximately 4:48 p.m., the Honda Pilot pulled over on Haight

Street near 41st Avenue in Flushing, New York.  There, UM1 met with another

unidentified male (UM5) who was standing on the side of Haight Street.  UM1

handed UM5 a small white bag from inside the Honda Pilot.  UM5 then brought

the small white bag into a white Mercedes and the Honda Pilot departed the

area.

15.     At approximately 4:53 p.m., the Honda Pilot pulled over on Roosevelt Avenue near Main Street in Flushing, New York and double parked. Law enforcement then observed an unknown Asian male, later identified as Lizhuo Wang ("L. Wang"), standing on the sidewalk immediately next to the Honda Pilot and looking around as if waiting to meet someone.  After a moment, L. Wang checked his phone, looked up again, and then walked directly to the Honda Pilot.

16.     L. Wang, who was empty-handed, walked to the passenger side of the Honda Pilot and opened the door where he retrieved a purple weighted bag and a black weighted bag from the front passenger seat.  L. Wang then took the two weighted bags inside the second floor of 135-50 Roosevelt Avenue, Flushing, New York.

17.     Law enforcement quickly followed L. Wang and observed that he was sitting inside of Suite 201, which is a money remitter business by the name of "Taichang Incorporated" (hereinafter "Taichang Inc.").  Law enforcement then contacted the building superintendent who met with law enforcement and allowed them to access the building's surveillance system. Review of video surveillance later confirmed that L. Wang entered Suite 201 and placed the two bags he retrieved from the Honda Pilot under the desk where he was working at Taichang Incorporated.

18.     With one of the officers acting a translator, law enforcement asked L. Wang if he had removed anything from the bags to which Wang responded that he had not.  Law enforcement requested that L. Wang retrieve the bags,

which he did.  L. Wang then provided both verbal and written consent for law enforcement to search the two bags.

19.    L. Wang handed over the black weighted bag and the purple weighted bag, which contained a tightly wrapped black plastic bag and a blue tote bag.  The search of the bags revealed a large amount of United States currency, which law enforcement seized.  The United States currency was wrapped in rubber bands and packaged in a manner consistent with how drug proceeds are typically packaged.  Law enforcement then read L. Wang his Miranda rights.

20.    During the review of the surveillance footage, law enforcement observed that L. Wang had worked all day at Taichang Inc.  When L. Wang assisted most of the customers, he was located behind a glass partition and appeared to ask each customer for proper identification and the completion of paperwork.

21.    Law enforcement further observed that L. Wang left the business on two other separate occasions.  On the first occasion, L. Wang met with the driver of an unidentified white Lexus and retrieved a blue tote bag, which L. Wang took back inside of Taichang Inc.  On the second occasion, L. Wang met with the driver of an unidentified red minivan where he retrieved a brown paper bag, which he also took inside of the business.  When asked about the brown paper bag, L. Wang stated that it was a food order and showed officers a clear plastic bag containing food.  Law enforcement noticed that the clear plastic bag

L. Wang said was in the brown paper bag appeared different than what was seen on the surveillance footage.

22.     While law enforcement was present, a woman named Qian Wang arrived and stated that she was the owner of Taichang Inc.  Law enforcement showed Qian Wang the bags of money that L. Wang had brought inside of Taichang Inc.  Qian Wang stated she would never accept money in the manner that L. Wang had accepted the bags from the Honda Pilot.  Qian Wang also stated that the money was not hers.  Qian Wang was initially very forthcoming with law enforcement, showing them her daily paperwork for money transfers. While law enforcement was looking over the paperwork for the daily transfers, an officer noticed a safe in the business.  When asked about the safe, Qian Wang stated there were documents inside of it and then requested the presence of a lawyer.  Law enforcement ceased questioning at that time.

23.     At approximately  8:57 p.m., an officer with the Hudson County Sheriff's Office deployed his certified narcotics detection canine "Nico" to inspect the currency seized from L. Wang. Nico signaled, through a distinctive set of behaviors, that he detected the presence of a controlled dangerous substance on the United States currency.

24.     Nico graduated from the Bergen County K9 Academy Narcotics Detection on May 22, 2015, and was certified in narcotics detection in January 2016 in a Bergen County scent class.  The course of study for narcotics detection introduced Nico to various target odors.  Such target odors included the odors of marijuana, cocaine, heroin, ecstasy, and methamphetamine.  Nico

-7-

proved to be reliable in locating the target odors as a result of the intense training he received.  During the course of this training, Nico and his handler, Officer Bart Lore, performed in excess of 275 searches for the above-listed substances.  Nico displayed a positive indication for the target odors during these searches, either by scratching or sitting at the source of the narcotics odor.  Masking agents such as dog food, liquid soap, bacon, saran wrap, parmesan cheese, coffee, duct tape, oil, and car scents, which are commonly used by narcotics traffickers, were used to distract Nico.  The masking agents did not inhibit Nico from either locating the narcotics odor or from exhibiting a positive indication.

25.    Subsequently, Nico was trained to detect the odor of controlled dangerous substances on currency.  Among other things, Nico was trained to distinguish between uncirculated currency and currency that was recently commingled with one of the five controlled substances Nico is trained to detect.

26.    Since his certification in 2015, Nico has continued weekly narcotic detection training, and completed recertification evaluations conducted by a New Jersey State Police certified canine trainer on a monthly basis.  Prior to the May 18, 2021 seizure, Nico completed recertification conducted by the Hudson County Sheriff's Office.

*June 24, 2021 Seizure*

27.    On or about June 24, 2021, after observing Zheng conduct what appeared to a money laundering transaction, law enforcement seized

approximately three bags containing approximately $463,000.00 from Zheng and his female companion in the parking garage of the Residence.

28.    Zheng was advised of his Miranda rights, which he waived.  Zheng admitted that he was involved in the laundering of narcotics proceeds, that he believed that the money in his possession represented drug proceeds, and that at least one portion of that money had been received from an individual who distributed controlled substances in the District of New Jersey.  Zheng also admitted that, in furtherance of the conspiracy, Zheng had delivered suspected drug proceeds to at least one money remitting business.  Zheng further admitted to accepting payment from another individual in exchange for delivering marijuana.

*September 10, 2021 Seizure*

29.    On or about September 10, 2021, officers observed Zheng visit a storage facility in Queens, New York ("Storage Facility-2"), then travel to another storage facility in Queens, New York (the "Ridgewood Facility").  Zheng spent approximately one hour at a storage unit in the Ridgewood Facility (the "Unit") before a box truck (the "Truck") arrived and backed into the Unit.  A wooden pallet that appeared heavy (the "Parcel") was loaded into the Truck. The Truck began to drive towards the District of New Jersey.  Law enforcement determined that the Parcel was to be dropped off in Elizabeth, New Jersey to be shipped to California.  Pursuant to a search warrant, law enforcement lawfully seized $1,590,630.00 of suspected drug proceeds from the Parcel.  The Parcel smelled of raw marijuana.

-9-

*February 16, 2022 Surveillance*

30.     On or about February 16, 2022, law enforcement observed Lin leave the Residence carrying a small bag (the "Black Bag").  Lin drove a Toyota Sienna (the "Sienna") to a second location in Queens, New York where, during a transaction with the driver of another vehicle, law enforcement observed that the Black Bag held at least two clear plastic vacuum sealed bags containing what appeared to be marijuana.

*Surveillance of the Residence*

31.     Law enforcement observed Lin and other suspected members of the DTO/MLO exit and enter the Residence with squared-off, weighted bags, or cardboard boxes.  During the course of the investigation, law enforcement had seized millions of dollars of suspected narcotics proceeds from bags and boxes resembling those seen being taken in and out of the Residence.  Law enforcement had also observed known and suspected members of the DTO/MLO enter and leave the Residence.

*February 23, 2022 Surveillance*

32.     On or about February 23, 2022, law enforcement observed Lin exit the Residence and drive the Sienna to the Ridgewood Facility.  Shortly after Lin arrived, a box truck (the "Box Truck") arrived at the Ridgewood Facility's parking lot and Lin directed the driver to follow him to a garage entrance to what appeared to be a warehouse (the "Garage").  There, the driver unloaded two pallets with cardboard boxes wrapped in black plastic packaging from the Box Truck.  The Box Truck was operated by a company based in Jersey City,

New Jersey.  The bill of lading associated with these pallets stated that the

pallets were shipped from Oklahoma.

33.     As the pallets were being unloaded, Zheng arrived.  Zheng and Lin

engaged in numerous countersurveillance measures, including looking into the

windows of nearby parked cars and paying close attention to the cars passing

them by.  Later, officers observed the Sienna park in the driveway of the

Residence and Lin enter the Residence.  After approximately one hour, two

suspected DTO/MLO members approached the Sienna and removed two

cardboard boxes, which they brought inside the Residence.  Approximately

twenty minutes later, Zheng arrived at the Residence.

*March 11, 2022 Surveillance*

34.     On or about March 11, 2022, Lin exited the Residence carrying a

large black bag (the "Large Bag") and a cardboard box (the "Box").  Lin

eventually provided the Large Bag and the Box to the operator of a vehicle with

a New Jersey registration (the "New Jersey Vehicle"), who then traveled back to

the District of New Jersey.  Based on training, experience, and the investigation

to date, including the DTO/MLO's use of the Residence to store narcotics, the

DTO/MLO's use of bags and boxes to store narcotics, and the New Jersey

Vehicle's short roundtrip to New York, which spanned approximately two and a

half hours, it is likely that the Large Bag and Box, which came from the

Residence, contained marijuana.

*March 18, 2022 Seizures*

35.     On or about March 18, 2022, law enforcement observed Lin and Zheng remove cardboard boxes (the "Marijuana Boxes") from a storage unit in Queens, New York and place them in the Sienna.  They also loaded boxes of wine into a Dodge Caravan (the "Dodge").  Lin drove off in the Sienna, and Zheng drove off in the Dodge.  Pursuant to the investigation, law enforcement stopped both cars.  Lin consented to a search of the Sienna and law enforcement recovered the Marijuana Boxes, which held what appears to be approximately 100 pounds of marijuana.  Zheng consented to a search of the Dodge and law enforcement recovered cases of expensive wine.

36.     Zheng was advised of his Miranda rights, which he waived.  He informed law enforcement that he did not own the Residence, but that he had been staying there while he was in New York.  Zheng had a key to the Residence in his possession.  Zheng consented to a search of the Residence and pointed out which bedroom belonged to him.  During the search of the Residence, law enforcement recovered approximately 450 pounds of marijuana, apparent drug ledgers, rubber bands suitable for the bundling of large quantities of money, a large amount of cash, money counters, and what appeared to be counterfeit drivers' licenses, including licenses purportedly issued by the State of New Jersey.  Investigators also recovered mail addressed to Zheng, photographs of Zheng within the Residence, and a distinctive pair of sneakers that Zheng had recently been observed wearing.  Law enforcement also found a bedroom believed to be utilized by Lin, which held paperwork

related to the registration for the Sienna.  Multiple cases of wine were additionally recovered.

37.　　Zheng informed law enforcement that he was paid to deliver marijuana and was also directed to pick up the cases of wine.

38.　　On March 19, 2022, Zheng and Lin were charged by criminal complaint, Mag. No. 22-10145, with conspiracy to distribute and possess with intent to distribute marijuana, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846, and conspiracy to launder monetary instruments, contrary to 18 U.S.C. § 1956(a)(1)(B)(i), in violation of 18 U.S.C. § 1956(h).

39.　　The DEA initiated administrative forfeiture proceedings against the Defendant in rem.  On or about November 7, 2022, Zheng filed a claim of ownership with the DEA and contested the forfeiture of the Defendant in rem.

## IV.  FIRST CLAIM FOR FORFEITURE

40.　　The allegations contained in paragraphs 1 through 39 of this Complaint are incorporated herein and made part hereof.

41.　　As a result of the foregoing, the Defendant in rem is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because the Defendant in rem constitutes money furnished or intended to be furnished in exchange for a controlled substance or is proceeds traceable to an exchange of moneys or other things of value furnished in exchange for a controlled substance in violation of violation of Title 21, Subchapter I, of the United States Code.

## V.  SECOND CLAIM FOR FORFEITURE

42.    The allegations contained in paragraphs 1 through 39 of this Complaint are incorporated herein and made part hereof.

43.    As a result of the foregoing, the Defendant in rem is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957 or a conspiracy to commit such a violation, in violation of 18 U.S.C. § 1956(h).

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendant in rem pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the Defendant in rem pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice of this action be given to all persons who reasonably appear to be potential claimants to the Defendant in rem; that the Defendant in rem be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems just and proper.

Dated:  Newark, New Jersey
        February 6, 2023

PHILIP R. SELLINGER
United States Attorney
*s/Sarah Devlin*
By: SARAH DEVLIN
Assistant United States Attorney

-14-

## **VERIFICATION**

I, Adam P. Sabatino, hereby verify and declare under penalty of perjury that I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in enforcing the criminal laws; that I have been deputized as a Special Federal Officer by the U.S. Drug Enforcement Administration, and in that capacity have responsibility for this action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the same is true to the best of my own knowledge, information, and belief.

The sources of my knowledge and the grounds of my belief include the official files and records of the United States, the State of New Jersey, and the State of New York; information obtained directly by me; and information supplied to me from and by other law enforcement officials, during an investigation of alleged violations of Title 21 of the United States Code.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this 6th day of February, 2023.

*TFO Adam Sabatino*
_____
Adam P. Sabatino
Task Force Officer
Drug Enforcement Administration